UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DWAYNE RIGGINS,

                        Petitioner,                    **REPORT AND RECOMMENDATION**

    -against-

                                                        12 Civ. 3903 (NSR)(GAY)

DAVID ROCK,[1]

                        Respondent.
---------------------------------------------------------X

TO THE HONORABLE NELSON STEPHEN ROMAN, United States District Judge:

      Petitioner Dwayne Riggins ("petitioner" or "defendant") has filed a *pro se* writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.[2]

## I.  FACTUAL BACKGROUND[3]

      On January 5, 2007, at approximately 6:15 p.m., Dwayne Foster was standing with some other people outside the Four Star Deli/Grocery in Mount Vernon, New York. Petitioner, armed with a loaded handgun, approached Foster and demanded money from him. Foster ran into the store; petitioner followed Foster inside and shot him twice

---

[1] The caption has been amended to reflect petitioner's transfer to Upstate Correctional Facility.

[2] My conclusions are based upon my evaluation of petitioner's claims on their merits, without regard to the issue of exhaustion. See 28 U.S.C. § 2254(b)(2).

[3] The factual background is taken from Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus which, in turn, incorporates facts set forth in the People's Affirmation in Opposition to defendant's omnibus motion (attached as Exhibit 3 to Respondent's Memorandum of Law).

(in the thigh and chest), which caused Foster's death.  Petitioner fled the store, discarded the weapon and, later that night, left Mount Vernon for Yonkers, New York.  Petitioner subsequently left New York State.

At the time of the murder, petitioner was on parole stemming from a 2004 conviction in Westchester County, New York for third degree attempted criminal possession of a weapon.  On or about January 31, 2007, the New York State Board of Parole issued a warrant for petitioner's arrest.  He was arrested on March 5, 2007 in Edgewater, Florida.  On March 8, 2007, petitioner waived extradition and agreed to voluntarily return to New York to face the parole violation charges.  He arrived at the Westchester County Jail on March 20, 2007.

On that day, at approximately 3:00 p.m., Mount Vernon police detectives came to the jail to interview petitioner about the Dwayne Foster shooting.  After petitioner was advised of his *Miranda* rights, he agreed to speak with the detectives about the murder and gave an oral statement.  Petitioner then agreed to repeat his statement on videotape.  Before he did so, he signed a written *Miranda* rights and waiver form (which was also signed by the officers who conducted the interview).  Petitioner thereafter repeated his version of events on videotape: that Foster had robbed him; he confronted Foster on January 5, 2007 to get his money back; when Foster ran into the store, petitioner thought Foster was going to get a gun, so petitioner fired his own gun twice.

## II.  PROCEDURAL HISTORY

On May 29, 2007, petitioner was charged by Westchester County Indictment Number 07-0494 with two counts of second degree murder (intentional and felony),

criminal possession of a weapon in the second degree and two counts of first degree attempted robbery. See Memorandum of Law and Respondent's Exhibits, Exhibit 1.[4] On June 5, 2007, petitioner appeared with counsel for arraignment and entered a plea of not guilty.

On or about July 20, 2007, defense counsel filed an omnibus motion seeking, *inter alia*, suppression of petitioner's statements. See Exh. 2. By Decision and Order dated November 27, 2007, the Westchester County Court (Cohen, J.), *inter alia*, granted a *Huntley* hearing to determine the admissibility of petitioner's statements. See Exh. 4.

On or about February 4, 2008, by order to show cause, defense counsel sought leave to file a late notice of intent to proffer psychiatric evidence of petitioner's low intelligence and impaired ability to read at the *Huntley* hearing and trial. See Exh. 5. In his affirmation in support of his application, defense counsel stated, *inter alia*: an issue arose as to whether petitioner suffered from impaired reading ability; defense counsel contacted a forensic psychologist (Dr. Alan Goldstein) and asked him to examine petitioner to assess his ability to have made a knowing, intelligent, voluntary waiver of his *Miranda* rights during his interrogation; Dr. Goldstein examined petitioner and, on or about January 23, 2008, he called defense counsel and reported his conclusion that, based on the results of petitioner's IQ and reading tests, petitioner was unable to understand the waiver form. See id. By Decision and Order dated March 5, 2008, the Supreme Court, Westchester County (Molea, J.) granted defense counsel's application

---

[4] Hereinafter, all citations to "Exh. ___" refer to exhibits attached to Respondent's Memorandum of Law.

and ordered: (1) that the final examination report prepared by the psychiatric expert of petitioner's choosing be furnished to the prosecution on or before March 10, 2008; (2) that petitioner submit to a psychiatric examination by the People's expert within two weeks from the date of the People's receipt of the defense expert's report (but, absent leave of the court, said examination was to take place by March 24, 2008); and (3) that all parties be prepared to commence trial on April 7, 2008.  See Exh. 6.

With leave of the court, the People's expert (Dr. Alan Tuckman) examined petitioner (in the presence of defense counsel) on May 7 and May 14, 2008, and issued his report on May 16, 2008.  See Exh. 7.  Dr. Tuckman reported that "[t]hroughout the evaluations, Mr. Riggins related in good contact.  He was clearly understood and it appeared that he clearly understood me.  His sentence structure was appropriate."  See id.  Dr. Tuckman's report concluded with his Forensic Psychiatric Opinion:

> Mr. Riggins has a comprehensive understanding of the legal system.  This is his third arrest, he has served prison time and has been on both probation and parole.  While the psychological testing by Dr. Goldstein[ ] presumably states that his IQ is "69," Mr. Riggins' fund of information, his reasoning ability, his sentence structure and general knowledge is significantly higher that what one would imagine of an individual with a 69 IQ.  Although, common knowledge, such as legal proceedings, and other aspects of the law can be learned by someone with that IQ.  Thus, it is my opinion that he clearly and accurately knew and appreciated the nature and consequences of his Miranda waiver.

See id.

On May 29, 2008, pursuant to plea negotiations, petitioner appeared with counsel for the purpose of entering a plea of guilty to first degree manslaughter (under a reduced Count One of the Indictment), in exchange for a sentence promise of twenty years imprisonment followed by five years post-release supervision.  See Transcript of

Proceedings, May 29, 2008. Petitioner objected to the imposition of post-release supervision; the court advised him that it was required by law and adjourned the matter to afford petitioner an opportunity to confer with counsel. See id. at 2-3. When the court reconvened, the following colloquy took place:

> THE COURT: Mr. Riggins, please raise your right hand.
>
> (The Court Clerk attempts to place the defendant under oath at this time.)
>
> THE DEFENDANT: You want me to swear and lie?
>
> THE COURT: Do you want to affirm rather than swear?
>
> THE DEFENDANT: What you mean, affirm?
>
> THE COURT: Well, what's your problem right now?
>
> THE DEFENDANT: Cause I'm swearing at something I didn't do. She's not writing that down. Yeah, I swear. You want me to lie? I'll swear.
>
> THE CLERK: You can put your hand down.
>
> THE COURT: All right, I think we're out of here.
>
> THE DEFENDANT: I said, I swear.
>
> THE COURT: Mr. Riggins, this is not a game. This is a very serious matter for you.
>
> THE DEFENDANT: I know this is very serious. It's my life.
>
> THE COURT: I think at this point I'll adjourn this case. We'll continue with the examinations that are being conducted,[5] and we'll continue with further proceedings in this case. Are we ready to proceed with pretrial hearings next week? I have a judge available.

---

[5] Dr. William Barr, the People's second psychiatric expert, had examined petitioner on May 21, 2008 and was expected to conclude his examination the following day.

See id. at 6-7.

    A.  <u>Petitioner's Guilty Plea and Sentencing</u>

On June 3, 2008, petitioner appeared with counsel and pled guilty in satisfaction of the indictment to first degree manslaughter (under a reduced Count One of the Indictment), in exchange for a sentence promise of twenty years imprisonment followed by five years post-release supervision.  <u>See</u> Transcript of Proceedings, June 3, 2008. Petitioner allocuted, in pertinent part, as follows:

    THE COURT: Mr. Riggins, Ms. Paula Branca-Santos will now ask you a series of question.  If you need to confer with Mr. Ryan before you answer any of the questions, you may do so.  Ms. Branca-Santos, you may proceed.

    Q.  Thank you.  Good afternoon, Mr. Riggins.

    A.  Good afternoon.

    Q.  Mr. Riggins, did you hear Mr. Ryan's application to the Court, what we're doing here today?

    A.  Yes.

    Q.  And is it also your application?

    A.  Yes.

    Q.  Do you understand that you have an absolute right to remain silent in the face of the charges against you, and that by entering your plea of guilty today you are giving up that right and incriminating yourself?

    A.  Yes.

    Q.  And have you had enough time to talk to Mr. Ryan and to make your decision to plead guilty today?

    A.  Yes.

    Q.  You talked to him a lot, right?

    A.  Yes.

Q. Are you satisfied with the representation given to you by Mr. Ryan?

A. Yes.

. . .

Q. Do you understand that with respect to the charges before you, you have a right to a jury trial or to a non-jury trial with the Judge sitting as the trier of fact?

A. Yes.

Q. And do you understand that if such a trial were to happen, the People, myself and Ms. Dushaj would have to prove every element of the crime beyond a reasonable doubt to secure a conviction of that crime?

A. Yes.

Q. And do you understand that at that trial, you would have a right to confront and cross-examine the People's witnesses?

A. Yes.

Q. And that you would also have a right to present witnesses and to testify on your own behalf? Do you understand that?

A. Yes.

Q. Do you understand that by your plea of guilty today, you waive these and other constitutional rights?

A. Yes.

Q. Mr. Riggins, do you understand that your plea of guilty is a conviction just as if you had gone to trial and been found guilty of the crime of Manslaughter in the First Degree?

A. Yes.

Q. Has anyone threatened, coerced or forced you in any way to plead guilty today?

A. No.

Q. Mr. Riggins, you're entering this plea of guilty freely and voluntarily and because you are, in fact, guilty of it?

A. Yes.

Q. Do you understand that you are pleading guilty to a class B violent felony, for which the maximum sentence would be 25 years in state prison, if you were convicted? You understand that?

A. Yes.

Q. Now, do you understand that if you are again convicted of a felony after this one, your conviction today may subject you to a greater sentence then if you had not been convicted? That means if later on you got convicted of a felony, you could get a higher sentence because of this one. You understand that?

A. Yes.

Q. Now, you heard what the Judge said with respect to the sentence promise. Do you understand everything that was said by the Judge?

A. Yes.

. . .

Q. Now, before sentence, the People are going to file a Predicate Violent felony conviction Statement, according to certain Criminal Procedure Law sections, alleging that you were duly convicted on or about February 26, 2004 for the crime of Attempted Criminal Possession of a Loaded Firearm in Westchester County. You remember that crime, and you pled guilty to it?

A. Yes.

Q. You have a right to controvert any of those allegations made in the statement and have a hearing to determine whether you are a second felony offender. As a condition of your plea here today, do you waive those rights and admit that you did plead guilty to the crime of Attempted Criminal Possession of a Loaded Firearm on February 26, 2004?

A. Yes.

. . .

Q. Do you understand, Mr. Riggins, that by waiving these rights, you're in the same situation as if you had had a hearing and been adjudicated a second felony offender for that first conviction?

A. Yes.

Q. And do you also understand now that you will be sentenced as a second felony offender?

A. Yes.

Q. Do you understand as a condition of your plea today, you're waiving the right to appeal your conviction and sentence to the Appellate Division Second Department?

A. Yes.

Q. And have you discussed this with Mr. Ryan?

A. Yes.

Q. And now, in consideration of your negotiated plea today, do you voluntarily waive your right to appeal your conviction and sentence under this indictment?

A. Yes.

. . .

Q. Mr. Riggins, do you understand that your statements today may be used against you in future and other judicial proceedings, as they are admissions of guilt?

(The defendant confers with his attorney at this time.)

A. Yes.

Q. Do you now plead guilty to the crime of Manslaughter in the First Degree, under reduced count one of indictment number 07-0494?

A. Yes.

Q. Dwayne Riggins, do you admit that in the County of Westchester, State of New York, in the City of Mount Vernon, on or about January 5, 2007, with intent to cause serious physical injury to another person, you caused the death of such person, that person being Dwayne Foster?

A. Yes.

Q. Do you understand everything that's been said here today, Mr. Riggins?

A. Yes.

MS. BRANCA-SANTOS: Judge, at this time based upon the defendant's

demeanor and his answers to my questions in court, the People respectfully request acceptance of his plea.

       THE COURT: Mr. Riggins, I will accept your plea entered on your behalf, and I'll set your case down for sentencing. . . .

See id. at 4-11.

On July 2, 2008, defense counsel's forensic psychologist (Dr. Alan Goldstein) issued a written report. See Exh. 12, "Exhibit E." According to Dr. Goldstein, defense counsel initially requested an evaluation of petitioner's "ability to have made a knowing, intelligent, voluntary waiver of his Miranda rights" but, following petitioner's guilty plea, defense counsel asked Dr. Goldstein "to prepare a report for sentencing purpose." See id. Dr. Goldstein thus issued the report, in which he stated the following opinions:

> Mr. Riggins is an intellectually limited individual. He is functioning within the Extreme Low range of intelligence, a category once referred to as "Mildly Mentally Retarded." He has a history of classification as a special education student.
>
> In addition to a Full Scale IQ of 66 (falling at the 1st percentile), severe deficits are noted in Mr. Riggins' ability to read words, to spell, to comprehend sentences he reads, and to perform mathematical operations. These academically-related abilities all fall within a level equal to that of the average third grader–typically a child between the ages of 8 and 9.
>
> There is no evidence found on the interviews, in the records I reviewed, and on a test that measures malingered symptoms of cognitive functioning to suggest that Mr. Riggins malingered or exaggerated his intellectual and academic deficits. As such, the significant deficits that were found are valid and genuine.
>
> Mr. Riggins' thinking and ability to make sense of what he sees and to accurately and appropriately analyze situations is overly simplistic, concrete and naive. He is likely to accept, at first glance, his initial impressions in an uncritical manner, without thinking through the implications of his actions.
>
> Mr. Riggins lacks the intellectual abilities and critical cognitive skills that

> serve as a necessary foundation for appropriate judgment and decision-making.  He is likely to be easily overwhelmed by unfamiliar situations, even those that involve minimal levels of challenge or those that represent a threat to him.
>
> His behavior at the time of the crime are, [sic] at least in part, a reflection of Mr. Riggins' cognitive deficits and his related impairments in judgment, decision-making, and his ability to analyze the appropriateness of his actions.

See id.  The record contains no other written report generated by Dr. Goldstein.

Petitioner was sentenced on August 21, 2008 in accordance with his plea bargain and is presently incarcerated at the Upstate Correctional Facility in Malone, New York.

B. Direct Appeal

By Decision and Order dated October 14, 2008, the Appellate Division, Second Department granted petitioner's motion for poor person relief and assigned Kenneth L. Bunting as appellate counsel.  On or about October 5, 2009, petitioner's appellate counsel filed an *Anders* brief[6] requesting to be relieved as attorney of record in light of the absence of non-frivolous issues.  See Exh. 8.  Appellate counsel also stated therein:

> Upon being assigned as appellate counsel, your undersigned contacted Mr. Riggins by letter of introduction dated October 24, 2008 and advised him that the transcripts of his Court proceedings had been requested and that after I had an opportunity to review both the transcripts and the file, he would be contacted again, but that at any time prior thereto he could contact me.  To date and throughout the entirety of this appeal all I have received are directions from Mr. Riggins to withhold the filing of the appeal due to the fact that he was going to file a motion and that it would have some effect on the appeal.

See id. at 10.  Petitioner filed no such motion.  Instead, petitioner sought leave from the Second Department to file a *pro se* supplemental brief; by Decision and Order dated

---

[6] See Anders v. California, 386 U.S. 738 (1967).

January 29, 2010, petitioner's application was granted.  However, by Decision and Order dated June 17, 2010, the Appellate Division recalled and vacated its previous decision and order and denied petitioner's motion for leave to file a supplemental *pro se* brief, on the ground that petitioner "failed to file a supplemental pro se brief although afforded sufficient opportunity to do so." See Exh. 10.  By Decision and Order dated June 29, 2010, the Second Department granted appellate counsel's application for leave to withdraw and affirmed petitioner's judgment of conviction.  See People v. Riggins, 74 A.D.3d 1368, 903 N.Y.S.2d 259 (2d Dep't 2010).

    C.  Writ of Error Coram Nobis

On or about May 6, 2011, petitioner filed a *pro se* petition for a writ of error coram nobis wherein he alleged that appellate counsel was ineffective because he ignored certain "meritorious issues" that should have been raised on direct appeal, *to wit*: (1) the trial court lacked jurisdiction because the foreperson did not sign the true bill; (2) due to petitioner's limited intelligence, his guilty plea was not knowing, intelligent and voluntary; and (3) trial counsel was ineffective because he failed to challenge the validity of petitioner's guilty plea.  See Exh. 12.  By Decision and Order dated October 11, 2011, the Second Department denied petitioner's application.  See People v. Riggins, 88 A.D.3d 820, 930 N.Y.S.2d 913 (2d Dep't 2011).  By letter dated October 28, 2011, petitioner sought leave to appeal said denial to the New York Court of Appeals.  See Exh. 16.  The Court of Appeals denied petitioner's application on February 29, 2012. See People v. Riggins, 18 N.Y.3d 927, 965 N.E.2d 968, 942 N.Y.S.2d 466 (2012).

    D.  Habeas Petition

On or about May 10, 2012, petitioner timely filed the instant Petition, wherein he

asserts the following grounds for relief: (1) the indictment was defective and the prosecution forged a true bill; and (2) appellate counsel was ineffective because he failed to argue (a) petitioner's limited intelligence prevented him from entering a guilty plea that was knowing, intelligent and voluntary and (b) trial counsel was ineffective because he failed to challenge the validity of petitioner's guilty plea.

### III. STANDARD OF REVIEW

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." See Williams v. Taylor, 529 U.S. 362, 405 (2000). As to the "unreasonable application"

prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  See id. at 411.  A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  See id. at 407.  However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  See Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted).  In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

  Finally, under the AEDPA, the factual findings of state courts are presumed to be correct.  See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  See 28 U.S.C. §2254(e)(1).

**IV. DEFECTIVE INDICTMENT / PROSECUTORIAL MISCONDUCT**

As his first claim for habeas relief, petitioner argues that the trial court lacked jurisdiction because the grand jury did not vote a true bill.  Petitioner further contends that the copy of the true bill submitted by the prosecution (in response to petitioner's application for a writ of error coram nobis) was a forgery.  In the first instance, petitioner fails to demonstrate that the alleged defects rise to the level of a constitutional violation.  See Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993).  "Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."  Alexander v. Louisiana, 405 U.S. 633 (1972).  See also Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990) ("The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states.").  In any event, petitioner's conclusory allegations are unsupported–and contradicted–by the record, which demonstrates that the grand jury returned a true bill, signed by the Foreperson of the Grand Jury.  See Exh. 13, Attachment 1.  Accordingly, I respectfully recommend that petitioner's first claim for habeas relief must be dismissed.

**V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

Petitioner also claims he is entitled to habeas relief on the grounds that his appellate counsel was ineffective because he failed to argue on direct appeal that (a) petitioner's limited intelligence prevented him from entering a guilty plea that was knowing, intelligent and voluntary and (b) trial counsel was ineffective because he failed

to challenge the validity of petitioner's guilty plea.  In order to prevail on his claims of ineffective assistance of counsel, petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-89, 693-94 (1984).[7]  Both prongs of the test must be met in order for petitioner to prevail.  See United States v. Campbell, 300 F.3d 202, 214 (2d Cir. 2002).  In applying the *Strickland* standard to the instant claim, this Court's review of appellate counsel's performance must be "highly deferential," and there is a "strong presumption" of attorney competence."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  Consequently, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

At the heart of petitioner's ineffective assistance claim is his assertion that his guilty plea was not knowingly and voluntarily entered due to his intellectual limitations. A guilty plea is consistent with due process if it is done "voluntarily, knowingly and intelligently, with sufficient awareness of relevant circumstances and likely consequences."  See United States v. Adams, 448 F.3d 492, 497 (2d Cir. 2006) (internal quotation marks and citation omitted).  See also Hill v. Lockhart, 474 U.S.52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of

---

[7] The Strickland test applies to claims of ineffective assistance of either trial or appellate counsel.  See Smith v. Robbins, 528 U.S. 259 (2000).

action open to the defendant."). Moreover, "[f]or the plea to be voluntary, it is axiomatic that the defendant must at least be competent to proceed." See Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004) (quotation and citation omitted). A defendant is "competent" to plead guilty if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as a factual understanding of the proceedings against him." See Godinez v. Moran, 509 U.S. 389, 399 (1993). Thus, a defendant who pleads guilty must not only be found competent to proceed, he must also knowingly and voluntarily waive his constitutional rights. See id. at 400.

Here, a review of the transcript of the plea hearing demonstrates that petitioner had a factual and rational understanding of the proceedings and was informed and aware of the consequences of his guilty plea. There is no indication in the record that, at the time of his plea, petitioner was mentally incompetent or otherwise lacked the mental capacity required to enter into a guilty plea. He acknowledged that he understood he was waiving his rights to remain silent, to trial by jury, to confront and cross-examine witnesses and to present witnesses on his own behalf. Petitioner also acknowledged that he had sufficient time to discuss the matter with his attorney and that he was satisfied with the representation provided by counsel. Indeed, there is no indication in the record that counsel's representation fell outside the range of competence demanded of attorneys in criminal cases. Petitioner further acknowledged that no one had coerced him or forced him to plead guilty and that he was freely and voluntarily pleading guilty because he was, in fact, guilty.

A "strong presumption of verity" attaches to admissions of guilt at a plea

allocution.  See United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992) (quoting and citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  It is of no moment that petitioner answered nothing more than "yes" or "no" when questioned during the allocution; his monosyllabic answers do not undermine a finding that his plea was valid.  See United States v. Torrellas, 455 F.3d 96, 103 (2d Cir. 2006).  Further, nothing in Dr. Goldstein's report suggests that petitioner was unable to understand the charges against him, unable to consult with his attorney in a meaningful manner or unable to understand the nature and consequences of his guilty plea.  Indeed, as Dr. Tuckman opined, petitioner had a comprehensive understanding of the legal system.  He was not a novice to the criminal justice system: this was his third arrest; he had previously pled guilty to a violent felony; he had previously served prison time and had been on both probation and parole.

In sum, the record amply demonstrates that petitioner was competent to plead guilty and his guilty plea was knowingly and voluntarily entered.  Thus, there is no merit to the claims petitioner contends appellate counsel should have pursued on appeal.  Petitioner has, therefore, failed to establish the second *Strickland* prong because he has failed to demonstrate a reasonable probability that the omitted claims would have been successful on appeal.  Accordingly, under the deferential AEDPA review standard, the Appellate Division's denial of petitioner's *coram nobis* application was neither contrary to, nor an unreasonable application of, federal law.

## VI. CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend, that the instant petition for a writ of habeas corpus be denied in its entirety.

## VII. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Nelson Stephen Roman at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Nelson Stephen Roman and not to the undersigned.

Dated: August 19, 2013
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.